**Christopher D. STRONG, Petitioner–Appellant,**

v.

**Gene JOHNSON, Respondent–Appellee.**

No. 05–6376.

United States Court of Appeals, Fourth Circuit.

Argued: March 16, 2007.

Decided: July 23, 2007.

---

**ARGUED:** Geoff Clemens, Student Advocate, Charleston School of Law, Charleston, South Carolina, for Appellant. Leah Ann Darron, Senior Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellee. **ON BRIEF:** Lorri Shealy Unumb, Professor, Charleston School of Law, Charleston, South Carolina, for Appellant. Robert F. McDonnell, Attorney General of Virginia, Richmond, Virginia, for Appellee.

Before NIEMEYER, MICHAEL, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge MICHAEL wrote the opinion, in which Judge NIEMEYER joined. Judge GREGORY wrote a separate dissenting opinion.

## OPINION

MICHAEL, Circuit Judge:

Christopher D. Strong, a Virginia prisoner, petitioned the Supreme Court of Virginia (the Supreme Court), under its original jurisdiction, for a writ of habeas corpus on the claim that his lawyer ignored his instruction to appeal his state convictions, thereby violating his Sixth Amendment right to assistance of counsel. The Supreme Court, after considering Strong's conclusory (sworn) statement and his lawyer's more detailed affidavit, found that Strong had not objectively demonstrated an intent to appeal. The Supreme Court therefore dismissed his petition. Strong then filed a federal habeas petition, raising the same claim, that was also dismissed by the district court. We, like the district court, conclude that the Supreme Court of Virginia's decision to dismiss was not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Accordingly, we affirm the dismissal of Strong's federal habeas petition.

## I.

After a bench trial on December 10, 2001, the Circuit Court of Hanover County, Virginia (circuit court), found Strong guilty of unlawful possession of a firearm by a convicted felon. Sentencing was delayed pending a second bench trial on March 25, 2002, in which Strong was convicted of one count of marijuana distribution. Thereafter, he was sentenced to five years' imprisonment with three years suspended on the firearm conviction and five years' imprisonment with four years and six months suspended on the marijuana conviction. The sentencing orders for both convictions were entered by the circuit court on April 4, 2002.

On that same date, April 4, 2002, the clerk of the circuit court received a letter from Strong, written two days earlier, that read:

> My name is Christopher Danton Strong, and I am writing to request a copy of my sentencing order.... If my lawyer has not noted my ap[p]eal for, "possession of a firearm after being a convicted felon," and "Distribution of marijuana over ounce, but under 5 pounds," then I would like to do so.

J.A. 24. The clerk's office, by letter dated April 4, 2002, informed Strong that his sentencing orders would be sent to him after they were entered. Although no mention of appeal was made in the clerk's response to Strong, it appears that Strong's letter was treated as a notice of appeal. Indeed, on May 8, 2002, a court reporter filed a transcript of the proceedings in Strong's cases with the clerk of the court and sent copies to the prosecutor and to Eddie R. Vaughn, Jr., Strong's lawyer. In her cover letter the court reporter said that she had prepared the

transcript "Pursuant to Notice of Appeal." J.A. 26. Strong was not sent a copy of this letter. Neither Strong nor his lawyer took further action, and on August 23, 2002, the Court of Appeals of Virginia dismissed Strong's case, explaining that no petition for appeal had been filed and that the time for filing had expired.

In December 2002 Strong attempted to file a *pro se* petition for a writ of habeas corpus in the Supreme Court of Virginia. This first petition apparently never reached the court, but Strong was successful in filing a verified petition on April 23, 2003. In it, Strong asserted a claim for "insufficient counsel" and explained that "I asked [my lawyer] to appeal, but he refused after leading me to believe that he would do so." J.A. 38. Strong provided no additional details, and he attached no supporting documentation. Moreover, he did not request an evidentiary hearing.

The Supreme Court entered an order on May 19, 2003, directing the respondent, the Director of the Virginia Department of Corrections (the Commonwealth), to respond to Strong's petition. On June 19, 2003, the Commonwealth moved to dismiss the petition, arguing that although Strong had initially wanted to appeal his convictions, Strong's lawyer, Vaughn, explained to Strong that he had no grounds on which to appeal. According to the Commonwealth, Strong ultimately agreed that no appeal would be filed. In support of this version of the facts, the Commonwealth attached a letter, dated April 23, 2003, from Vaughn to the Virginia State Bar Counsel. The letter was in response to a "bar complaint" that Strong had filed. Vaughn said in his letter:

> I did represent [Strong] on the cases set out in his letter of April 2, 2003. He was convicted of selling marijuana and had a show cause hearing on a previously suspended sentence.

> After the hearing I visited Mr. Strong twice at the Pamunkey Regional Jail. His letter is correct in that he had indicated a wish to appeal. His letter is also correct in that I advised him he had no grounds upon which to [b]ase an appeal. He understood and agreed that an appeal would serve no purpose. We revisited this issue on my second visit with the same results. Mr. Strong knew no appeal would be filed and understood there was no basis upon which to file it. He agreed with this and was twice advised in reference to this.

J.A. 58. The letter was "subscribed and sworn to" by Vaughn before a notary public as a "true and exact copy." *Id.*

Strong did not request leave, as required by Supreme Court of Virginia Rule 5:7(e), to file a response to the Commonwealth's motion to dismiss. Nonetheless, Strong submitted a response to the Supreme Court on July 7, 2003. The response was unverified. In this document Strong asserted for the first time that "[a]fter the deadline to appeal had passed, Mr. Vaughn stated to [me], 'I have read over your court transcripts and there is nothing to appeal!'" J.A. 62–63. Strong attached a copy of his April 2, 2002, letter to the Hanover County circuit clerk in which he had asked for copies of his sentencing orders and advised the clerk that "if his lawyer ha[d] not noted his appeal ... he would like to do so." J.A. 24, 66. The clerk's letter to Strong of April 4, 2002, explaining that his sentencing orders would be sent after they were entered, was also attached.

In an order entered October 9, 2003, the Supreme Court of Virginia granted the Commonwealth's motion to dismiss Strong's petition, based on the following findings of fact:

> The record, including the affidavit of counsel, demonstrates that petitioner

initially instructed counsel to appeal his convictions and counsel advised petitioner that he had no grounds upon which to appeal. Petitioner told counsel he understood and agreed that an appeal would serve no purpose. Counsel revisited this issue during a second visit with petitioner, and petitioner again agreed that his convictions would not be appealed. Petitioner has failed to establish that he objectively demonstrated his intent to appeal his conviction.

J.A. 80–81. The Supreme Court's decision did not refer to Strong's July 7, 2003, response, which Strong had submitted without leave of court.

On October 20, 2003, Strong filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the Eastern District of Virginia. In his federal petition Strong asserted that he had been denied "effective assistance of counsel" because "[m]y court appointed attorney told me he would appeal my case, but when it was too late to appeal, he came back and told me there was nothing· to appeal." J.A. 86. The Commonwealth moved to dismiss Strong's petition on August 3, 2004. On February 3, 2005, the district court granted the Commonwealth's motion to dismiss, concluding that the Supreme Court of Virginia's decision to reject Strong's claim was not objectively unreasonable "in light of the [ ] facts and evidence before [that court]." J.A. 157.

Strong, now represented by appointed counsel, appeals.

## II.

### A.

■ We review *de novo* a district court's decision on a petition for writ of habeas corpus based on a state court record, and we, like the district court, are bound by 28 U.S.C. § 2254(d). *Spicer v.*

*Roxbury Corr. Inst.,* 194 F.3d 547, 555 (4th Cir.1999). Thus, a federal court may not grant the writ

with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■ Strong seeks a writ of habeas corpus on the ground that his Sixth Amendment right to the assistance of counsel was violated by Vaughn's failure to appeal his case. "[F]ailure to file a *requested* appeal is *per se* ineffective assistance of counsel, irrespective of the possibility of success on the merits." *United States v. Foster,* 68·F.3d 86, 88 (4th Cir. 1995). In other words, a petitioner whose counsel failed to file a requested appeal does not have to show prejudice in order to obtain relief. *See United States v. Peak,* 992 F.2d 39, 42 (4th Cir.1993). When, however, the petitioner agrees that an appeal would be fruitless, his counsel is under no obligation to pursue it. *See Roe v. Flores–Ortega,* 528 U.S. ·470, 479, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). The underlying dispute in this case centers on whether Strong continued to request that Vaughn file an appeal or whether Strong instead agreed ultimately that no appeal would be taken. Strong argues that the Supreme Court of Virginia's decision that he did not demonstrate an intent to appeal is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d)(2). According to Strong, the Supreme Court of Virginia's decision was based on an unreasonable determination of the facts because that court: (1) resolved a credibility dispute between Strong and Vaughn without conducting an evidentiary hearing; (2) treated Vaughn's letter as an affidavit when it was only a certified copy; and (3) failed to make an explicit finding on the issue of whether Vaughn and Strong discussed the possibility of appeal before or after the deadline for appeal had passed.

█ To start with, it is necessary to clarify what evidence was properly before the Supreme Court of Virginia. Much of Strong's argument takes for granted that his July 7, 2003, response (with attached exhibits) to the Commonwealth's motion to dismiss should have been considered by the Supreme Court. (The exhibits were his April 2, 2002, letter to the circuit clerk noting his appeal and the clerk's April 4, 2002, response.) In his response Strong asserted for the first time that Vaughn consulted with him after the deadline for appeal had passed. We agree with the Commonwealth that the response and its exhibits were not properly before the state court. Supreme Court of Virginia Rule 5:7 specifies the pleadings permitted in an original jurisdiction habeas corpus case: a verified petition and a responsive pleading. A memorandum of law may be filed *along with* either of these pleadings. Absent court authorization, no other documents may be filed. *See In re Carpitcher*, 47 Va.App. 513, 523, 624 S.E.2d 700, 705 (2006) ("Nothing in Rule 5:7 . . . authorizes a party to file a supplemental briefing without first obtaining leave of court."); *see also Lenz v. Warden of the Sussex I State Prison*, 267 Va. 318, 325 n. 3, 593 S.E.2d 292, 296 n. 3 (2004) (noting that a "supplemental brief" filed in a habeas proceeding "was rejected" by order of the court). It appears that the Supreme Court adhered to its Rule 5:7 because its decision did not refer to Strong's response or any of its factual assertions. In these circumstances, we do not consider Strong's July 7, 2003, response in our review of the "evidence presented in the State court proceeding." § 2254(d)(2).

We are therefore left with the following as the evidence that was before the Supreme Court of Virginia: (1) the unadorned, verified assertion made by Strong in his petition that Vaughn refused to file an appeal and (2) the letter, considered by the Supreme Court as an affidavit, from Vaughn to the state bar, explaining that he had twice met with Strong regarding the appeal and that Strong had ultimately agreed that an appeal would not be filed.

## B.

█ Strong first argues that the Supreme Court of Virginia's determination of the facts was unreasonable because it resolved the credibility dispute between him and his lawyer without an evidentiary hearing. As Strong concedes, however, credibility determinations may sometimes be made on a written record without live testimony. Specifically, there is no prohibition against a court making credibility determinations based on competing affidavits in certain circumstances. *See Tanberg v. Sholtis*, 401 F.3d 1151, 1161 (10th Cir. 2005); *United States v. Barsanti*, 943 F.2d 428, 440 (4th Cir.1991). Choosing between conflicting affidavits without a hearing may be reasonable when one affidavit is cryptic or conclusory with respect to a contested issue of fact and the other affidavit sets out a detailed account of events. *Compare United States v. McAtee*, 481 F.3d 1099, 1103 (8th Cir.2007) (explaining that the inclusion of specific details in an affidavit was an indicator of the affiant's credibility) *with United States v. Perez*,

393 F.3d 457, 464 (4th Cir.2004) (stating that a court may discount "unsupported, conclusory statements" in an affidavit).

In this case Strong's verified petition stated only that "I asked [my lawyer] to appeal, but he refused after leading me to believe that he would do so." J.A. 38. Strong gave no further details in his petition, nor did he attach any supporting documentation. In contrast to Strong's cryptic statement, the Commonwealth submitted Vaughn's letter, in affidavit form, to bar counsel that explained in detail how he and Strong came to agree that no appeal would be pursued. Because these two written (and sworn) statements were the *only* evidence that had been properly submitted to the Supreme Court, it was not unreasonable for the court to make a credibility determination based on the two statements.

■ Strong's second argument fares no better than his first. He objects to the Supreme Court's treatment of Vaughn's letter to the Virginia State Bar Counsel as an affidavit. Strong claims that the letter is only a certified copy and not a sworn document. Thus, Strong argues that "[t]he Virginia Supreme Court's factual determinations were unreasonable because they were based on a single" unsworn statement. Appellant's Br. at 23.

■ The notary's handwritten statement included on the letter as submitted to the Supreme Court reads as follows:

Subscribed and sworn to before me, a notary public in and for the jurisdiction aforesaid as a true and exact copy this 26th day of June, 2003.

J.A. 58. The notary's statement does not follow the ordinary form. It begins with the exact language used for a notary's jurat (the official statement added to an affidavit), but ends with some of the language used by a person certifying before a notary that a copy is correct. *See A Handbook for Virginia Notaries Public*, Office of the Secretary of the Commonwealth 7 (2003), *available at* http://www. soc.state.va.us/OfficialDocuments/Notary/ notaryHB2003.pdf. A jurat uses the words "subscribed and sworn" while a certification uses the words "true and exact" copy. It is important here that the initial language used by the notary—"Subscribed and sworn to before me"—reveals that an oath was administered to Vaughn. *See id.* at 8 ("For any notarial act that includes the words 'sworn' or 'affirm,' an oath must be administered by a notary."). Oaths are only required when a notary's statement is a jurat, which means that the affiant has sworn to the truth of the document's contents. When a notary is only attesting that a copy has been certified, the notary is not required to administer an oath to the person making the certification. *Id.* at 7.

In light of the specific purpose of the words "subscribed and sworn to," and the notary's use of those words here, it was not unreasonable for the Supreme Court to treat Vaughn's letter as an affidavit. *See Schriro v. Landrigan*, —— U.S. ——, 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836 (2007) ("The question under [28 U.S.C. § 2254(d) ] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

■ Strong's third argument, which we also reject, is that it was unreasonable for the Supreme Court of Virginia to "completely ignore[ ]" the unsworn allegations made in his July 7, 2003, submission about the timing of Vaughn's visit (or visits) with him at the jail to discuss an appeal. Appellant's Br. at 28. Again, Strong asserts that the visits (and conversations) took place after the deadline for appeal had

passed. The timing of the visits, Strong maintains, is a "critical factual issue" in the case, and the Supreme Court was therefore required to address the issue explicitly. *Id.* at 29. As we have already explained, Strong's only statement about the timing of Vaughn's visits was made in his unauthorized and unsworn submission to the Supreme Court. Accordingly, that submission, which asserts untimely consultation, is not part of the duly presented evidence in the Supreme Court habeas proceeding, and the court was not required to consider it. Regardless, in crediting Vaughn's account of events, the Supreme Court made an implicit finding that Vaughn's consultation with Strong about the merits of an appeal was undertaken on a timely basis. That finding was implicit because unless the consultation was timely, there would have been no reason for the court to proceed to make findings about the details of Vaughn's two discussions with Strong about the merits of an appeal. The Supreme Court's implicit finding of timeliness was not unreasonable in light of the evidence that was properly presented to the court. *Cf. Wright v. Angelone,* 151 F.3d 151, 157 (4th Cir.1998) (explaining that a federal court will not conclude under § 2254(d) that a state court decision is unreasonable simply because the state court's reasoning is not explicitly detailed).

### III.

In sum, we hold that the Supreme Court of Virginia's decision to dismiss Strong's petition for a writ of habeas corpus was not based on an unreasonable determination of the facts in light of the evidence properly presented in the original proceeding before that court. Accordingly, the district court's order dismissing Strong's federal habeas petition is

*AFFIRMED.*

GREGORY, Circuit Judge, dissenting:

I agree with the majority's analysis in all respects but one: The majority concludes that it was not unreasonable for the Supreme Court of Virginia to treat Vaughn's letter as an affidavit attesting to the truth of the letter's contents. I do not see how this can be so. If the letter is no more than a correct copy of an unattested account, it cannot form the basis for a finding that Strong's sworn account is untrue. Without a sworn statement from Vaughn, the supreme court's determination that Strong's should be discredited becomes unreasonable, and I find it to be such. Accordingly, I would reverse the district court and grant the writ.

The jurat on Vaughn's letter is unusual, but not unclear. To the customary "Subscribed and sworn to before me ..." language, the notary appended "as a true and correct copy," so that the jurat reads: "Subscribed and sworn to before me, a notary public in and for the jurisdiction aforesaid as a true and correct copy this 26th day of June, 2003." J.A. 58. The majority correctly observes that the words "Subscribed and sworn to before me" indicate that an oath was administered to Vaughn. But the majority then concludes that the supreme court acted reasonably in finding implicitly that the oath in question dealt with the veracity of the contents of Vaughn's letter.

It is plain from the wording of the notary's inscription that Vaughn's oath had nothing to do with the letter's contents. Unmodified, the phrase "subscribed and sworn to" would indicate that the document in question had been affirmed to be true and signed by the affiant. *See Black's Law Dictionary* 866 (8th ed.2004) (defining *jurat* ). On Vaughn's letter, however, the phrase is modified. According to the jurat, Vaughn swore that the document was an accurate copy of another: the letter he sent to the Virginia State Bar.

To reach the conclusion that the notary's inscription on the letter indicates Vaughn attested to the truth of the letter's contents, the supreme court (and the majority) must ignore the words "as a true and correct copy," which are included as part of that inscription. These words are equally a part of the jurat as those upon which the majority places so much importance. To ignore them is to change the meaning of the statement given by the notary, a proposition that seems to me completely antithetical to the purpose of requiring the notary's verification in the first place.* Courts treat as true sworn statements to which a notary public has borne witness. The only record a court is given as to what a notary witnessed is the notary's own, embodied in the jurat. The court that replaces the notary's inscription with one it expects to find nullifies the authentication upon which the court purports to rely.

By implicitly finding that Vaughn swore to the truth of the contents of his letter, the supreme court found that the notary's inscription means something other than what it says. I consider this finding wholly unreasonable. The notary's statement is not ambiguous. It is not incoherent or nonsensical. It is not, as far as I can tell, in need of any correction whatsoever. The notary's language cannot be ignored or altered at a court's convenience; the content of Vaughn's letter must be treated as unattested.

Without a verified account or other evidence contradicting Strong's sworn assertions, the supreme court cannot reasonably determine them to be false. In his verified petition, Strong stated unequivocally that he asked Vaughn to appeal his case, but Vaughn refused to do so. The supreme court relied upon Vaughn's letter to discredit Strong's claims. There was nothing else upon which to rely. Absent that letter, there is no basis for concluding that Strong's assertion was false. If his assertion is true, he must prevail.

As the majority notes, a failure to file a requested appeal is per se ineffective assistance of counsel. *See ante* at 138 (citing *United States v. Foster,* 68 F.3d 86, 88 (4th Cir.1995)). To win his case, Strong need not show prejudice, *see United States v. Peak,* 992 F.2d 39, 42 (4th Cir.1993); he need only show that he requested an appeal and none was filed. He has shown both. Therefore, under 28 U.S.C. § 2254(d)(2), this Court must grant Strong a writ of habeas corpus and afford him an opportunity for his appeal to be heard. On this record, the supreme court's finding that Strong withdrew his request for Vaughn to file an appeal was unreasonable. The majority upholds that finding. Thus, I respectfully dissent.

---

* I doubt the majority would be willing to ignore a portion of the jurat in every case. Surely the majority would not uphold the supreme court's finding if the jurat had read

"Subscribed and sworn to before me, a notary public in and for the jurisdiction aforesaid as an untrue and incorrect copy this 26th day of June, 2003."